UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

COREY BENSON,

        Plaintiff,

        v.                                                Case No. 22-cv-0669-bhl

KAREN E. SCHOENIKE,

        Defendant.

---

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

      Plaintiff Corey Benson, an inmate at the Waupun Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on an Eighth Amendment claim based on allegations that Defendant Karen E. Schoenike delayed responding to his complaints of pain following a tooth extraction. On April 6, 2023, Schoenike moved for summary judgment. For the reasons explained below, the Court will grant her motion and dismiss this case.

### BACKGROUND

      At the relevant time, Benson was incarcerated at the Waupun Correctional Institution. Defendant Karen Schoenike worked as a dentist supervisor; her duties included traveling among twelve institutions, as needed, to supervise dental staff and oversee the daily operations of the assigned dental clinics. Between January and April 2022, there was no dedicated dentist, dental hygienist, or dental assistant at Waupun. As such, Schoenike and staff from other institutions were rotated into Waupun to help provide care. Dkt. Nos. 25, 44 at ¶¶1-7.

      On January 25, 2022, Benson was sent to an offsite dental surgeon to have his lower right wisdom tooth extracted. The extraction was highly difficult because the tooth was fully impacted

(enclosed in bone) and near the inferior alveolar nerve. Benson signed a surgical consult form acknowledging some of the challenges he might face after surgery, including pain, infection, swelling of the face, bleeding, bruising, restricted jaw opening, and nausea. After the extraction, the specialist recommended amoxicillin and ibuprofen for the pain. That same day, an on-call doctor ordered amoxicillin and an ice bag for Benson. Benson said he would not take the ibuprofen because of potential side effects, so it was not ordered. Dkt. Nos. 25, 44 at ¶¶18-21; Dkt. No. 42 at ¶¶14-15.

Also on January 25, 2022, Benson submitted a dental services request stating that he had not been given "soft foods – Ensure" or the prescribed medications and that he was in a lot of pain. Schoenike responded, noting that Benson had refused the ibuprofen and informing him that the amoxicillin had been ordered. She also explained that he did not need Ensure, but his food could be blended if wanted it to be. The next day, Benson submitted another dental services request asking for Ensure. A doctor (who is not a Defendant) responded and told him that most of his foods could be mashed and swallowed. Dkt. Nos. 25, 44 at ¶¶27, 30.

Schoenike did not receive any notice, and was thus not aware, that Benson was having any pain or difficulty until February 21, 2022, nearly a month after the extraction. At that time, Benson filed a dental services request stating that he was having a "sharp pain" every time he ate on the right side of his mouth. He requested "a visit to determine the problem I'm having." Benson was placed on the essential waitlist, meaning that he would be scheduled to be seen within eight weeks. Schoenike explains that Benson was not placed on the urgent list because he was not having a life-threatening dental emergency. Schoenike notes that Benson was not complaining of swelling or of pain while he slept, and that he stated that he was having pain only when he ate on one side of his mouth. She further explains that, given the complicated nature of the extraction, it was not

alarming that he was experiencing some pain on the side of the extraction as it would take months for him to completely heal. Dkt. Nos. 25, 44 at ¶¶31-36.

A few days later, on February 25, 2022, Benson was seen in health services for complaints of pain when he chewed and tightness on the right side of his jaw. The nurse noted no signs of infection but did acknowledge some swelling on his right jaw/cheek. Benson was prescribed a second round of amoxicillin, but he declined an ice bag and again refused pain medication. About a week and a half later, on March 9, 2022, Benson filed another dental services request stating that he was in severe pain and needed to see a dentist. A couple of days later a doctor responded that Benson was on the essential waitlist which is for people complaining of severe pain. On March 18, 2022, Schoenike responded to Benson and explained that she had tried to arrange an emergency pass to have him seen at the dental clinic that day, but it had to be rescheduled to the next available day (March 22, 2022) because security was not available to escort him. As a precaution and in response to Benson's assertion that his face was beginning to swell, Schoenike prescribed a third round of amoxicillin and asked him to let her know if his symptoms worsened. Dkt. Nos. 25, 44 at ¶¶37-50.

On March 21, 2022, Benson submitted another dental services request stating that he had received the third round of amoxicillin, but he did not believe he had an infection. He repeated that his pain was severe and that his symptoms continued to persist. The next day, on March 22, 2022, Schoenike performed a limited oral evaluation on Benson. He reported feeling swelling at times around the extraction site and that he was not able to eat on that side of his mouth. He also reported a sharp pain that radiated down his neck and on the right side of his mouth only when he chewed food on that side. Schoenike noted no obvious signs of jaw fracture and that the extraction site appeared to be healing well from a visual perspective. Benson noted some tenderness at the

3

extraction site. Schoenike continued his prescription for amoxicillin and, although she determined that Benson was not in urgent need of treatment, she decided it was appropriate for him to be sent back to the surgeon who performed the tooth extraction for post-operative evaluation and care. Dkt. Nos. 25, 44 at ¶¶51-54.

Schoenike explains that she placed an order for an offsite visit and spoke to the person responsible for scheduling appointments to confirm she received the information and would schedule the appointment. There is no practice or policy related to how long an inmate may have to wait to see an offsite specialist as they determine their own schedule based on availability. Dkt. Nos. 25, 44 at ¶¶55-57.

Less than a week later, on March 27, 2022, and again on March 28 and March 30, Benson filed dental services requests stating that he completed the third round of antibiotics but continued to be in severe, excruciating oral pain including headaches, slight swelling, lock jaw, and difficulty eating. Schoenike responded, noting that he had said he was in pain only on the right side of his mouth while chewing and suggesting that he chew on the other side of his mouth. She also noted that she had observed no signs of lockjaw during her examination a week earlier. Finally, she informed him that he had been scheduled for an offsite appointment. Benson continued to refuse ibuprofen for pain. Dkt. Nos. 25, 44 at ¶¶58-67.

On March 31, 2022, Benson was seen by health services for complaints of pain while he ate. The nurse noted no signs or symptoms of infection or facial swelling. Benson finally agreed to take ibuprofen for the pain. A few days later, on April 4, 2022, Benson filed a dental services request stating that the ibuprofen did not help, he had no change in symptoms, and he was not eating on the right side of his mouth. The next day, on April 5, 2022, Benson had an offsite appointment with the dental surgeon who extracted his tooth. Benson underwent a debridement

procedure, which is a surgical procedure where the extraction site is accessed surgically and scraped out to create a fresh blood clot to resume healing. That day, another doctor ordered ibuprofen, an ice bag, and amoxicillin for Benson. Dkt. Nos. 25, 44 at ¶¶68-75.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Benson asserts that Schoenike violated his rights under the Eighth Amendment because she ignored his increasingly desperate complaints of pain for months after a complicated tooth extraction. On this record, Schoenike is entitled to summary judgment because no reasonable jury could find that Schoenike was deliberately indifferent to Benson's complaints. To the contrary,

the evidence shows that, contrary to Benson's characterization, Schoenike continuously attended to his complaints, consistent with her medical judgment and prison procedures and resources.

To prevail on a deliberate indifference claim under the Eighth Amendment, a plaintiff must prove that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). The Seventh Circuit has clarified that, "[w]ithin the universe of deliberate indifference cases is a narrower category when a prisoner alleges not that his condition was ignored entirely, but that he received constitutionally deficient treatment for that condition." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). These types of cases are "better framed not as deliberate indifference to a serious medical need, but as a challenge to a deliberate decision by a doctor to treat a medical need in a particular manner." *Id.* (internal punctuation and citations omitted). It has long been held that, in such cases, courts must "defer to a medical professional's treatment decision 'unless no minimally competent professional would have so responded under those circumstances." *Id.* Further, it is important to note that a "disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment is generally insufficient, by itself, to establish an Eighth Amendment violation." *Id.* (citations omitted).

The parties agree that the pain Benson experienced following his tooth extraction is an objectively seriously condition. The Court's decision will therefore focus on Schoenike's response to that condition. Benson first raised concerns to dental services on the day of the extraction. He complained that he was not receiving Ensure as a meal replacement. Schoenike responded that Ensure was not necessary and that she could order his food to be blended, if he would like. Benson did not take her up on this offer. Schoenike explains that she determined that blending the food

would appropriately address the issue of discomfort while eating. She further explains that she did not want to provide Ensure because it is a highly sought after item at Waupun and therefore requests for it can be abused. Benson provides no evidence suggesting that blending or mashing his food would have been inadequate to address his discomfort while eating, so, although he would have preferred Ensure over blended or mashed food, his preference does not support a claim under the Eighth Amendment. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) ("a mere disagreement with the course of the inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference").

Benson did not raise any concerns to dental services for nearly a month. On February 21, 2022, he complained about sharp pain while eating. Benson's complaint was neither urgent nor life-threating. The pain, while sharp, was confined to one side and occurred only when Benson ate. Schoenike adequately explains that she was not alarmed by the onset of pain one month after the extraction because it had been a complicated procedure and the extraction site would likely take months to heal. Benson was therefore placed on the "essential" list, which meant he would be seen within eight weeks. Even then, Benson did not have to wait eight weeks; he was seen just a few days later in health services, at which time he was prescribed amoxicillin as a precaution to address swelling on the right side of his jaw. Less than a month later, on March 22, 2022, Schoenike performed a limited oral evaluation, continued his prescription for amoxicillin, and referred him to the offsite surgeon who had performed the extraction.

Benson asserts that Schoenike should have seen him sooner and should have taken steps to address his pain rather than persisting with a prescription for amoxicillin. But Schoenike has explained that Waupun had no dedicated dental staff at that time, and because Waupun was only one of many prisons she rotated through, patients had to be prioritized according to the urgency of

7

their needs. Benson provides no evidence that Schoenike was responsible for addressing the staffing shortage at Waupun, nor does he provide evidence that she prioritized patients with less significant needs than his over him. More importantly, Benson concedes that he was seen in health services within days of his dental services request and offered ibuprofen for his pain. As he had done since the day of the extraction, Benson refused to take ibuprofen. He complains that Schoenike persisted in prescribing amoxicillin, which was ineffective to treat his pain. But the record confirms that Schoenike prescribed amoxicillin not for pain but as a way to treat a possible infection based on his complaints of swelling. Benson concedes the amoxicillin was effective in addressing the swelling. From the day of the extraction, Schoenike had offered ibuprofen for the pain, as recommended by the dental surgeon, but Benson refused to take it. Therefore, his assertions that Schoenike failed to address his complaints of pain ring hollow given his refusal to take the pain medication she offered him. *See Munson v. Newbold*, 46 4th 678, 682 (7th Cir. 2022) (finding no deliberate indifference after highlighting that prisoner twice walked away from treatment opportunities). Again, Benson may have preferred a different kind of pain medication, but his preference for something other than what was offered to him does not support a claim under the Eighth Amendment. *See Snipes*, 95 F.3d at 591.

Benson also asserts that, after referring him to the dental surgeon on March 21, 2022, Schoenike should have made efforts to expedite his appointment, which did not occur until two weeks later, on April 5, 2022. But Schoenike explains that once she refers a patient to an offsite specialist, she has no control over when the appointment is scheduled because the offsite specialist determines scheduling based on their availability. Dkt. No. 25 at ¶57; *see Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002) (affirming dismissal of deliberate indifference claim, in part, because delay in seeing specialist was caused by factors not within the control of the referring

8

provider). Benson also asserts that Schoenike did nothing to treat his pain during this time except tell him to eat on the other side of his mouth. But, as noted before, until just days before he was seen by the dental surgeon, Benson repeatedly refused Schoenike's offer of ibuprofen. While the ibuprofen ultimately proved ineffective, it is not clear that it would have been ineffective had it been taken when first recommended. Also, Benson could not have known it would be ineffective until he tried it. Given that he had the debridement surgery the day after his three-day ibuprofen trial ended, there was no opportunity for Schoenike to offer an alternative pain medication.

Finally, Benson asserts that Schoenike failed to adhere to department policies regarding the scheduling of appointments, responding to dental services requests, and the completion of forms. But §1983 "protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations . . . ." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). Thus, even if Schoenike's actions violated policies, such violations on their own would be insufficient to support a deliberate indifference claim. Given that no reasonable jury could conclude that Schoenike was deliberately indifferent to Benson's pain, she is entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Schoenike's summary judgment motion (Dkt. No. 23) is **GRANTED** and this action is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin on August 15, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.